FILED IN CHAMBERS
U.S.D.C ATLANTA
Date: Oct 23 2026
KEVIN P. WEIMER , Clerk
By: M. Gonzalez
Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

Luis Espondola

**CRIMINAL COMPLAINT**

Case Number: 1:26-MJ-1128

I, the undersigned complainant depose and say under penalty of perjury that the following is true and correct to the best of my knowledge and belief. On or about October 23, 2026 in Fulton County, in the Northern District of Georgia, defendant(s) did, knowingly possessing with the intent to distribute 400 or more grams of a mixture and substance containing a detectable amount of N-phenyl-N-[ 1- ( 2-phenylethyl )-4-piperidinyl ] propenamide (Fentanyl)

in violation of Title 21, United States Code, Section 841(a)(1).

I further state that I am a(n) Special Agent with Homeland Security Investigations and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof. Yes

Sean Sampson

Signature of Complainant

Sean Sampson

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

October 23, 2026 at Atlanta, Georgia

Date | City and State

LAWRENCE R. SOMMERFELD

UNITED STATES MAGISTRATE JUDGE

Name and Title of Judicial Officer

Lawrence R Sommerfeld

Signature of Judicial Officer

AUSA Calvin A. Leipold / calvin.leipold@usdoj.gov

ATTEST: A TRUE COPY
CERTIFIED THIS
Date: Oct 23 2026
KEVIN P. WEIMER, Clerk
By: M. Gonzalez
Deputy Clerk

AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Sean Sampson, a Special Agent of the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI), being duly sworn, depose and hereby state that the following is true and correct to the best of my knowledge, information, and belief:

Purpose of Affidavit

2. I make this affidavit in support of an application for the issuance of a criminal complaint and arrest warrant for Luis ESPINDOLA for knowingly possessing with the intent to distribute 400 or more grams of a mixture and substance containing a detectable amount of N-phenyl-N-[ 1- ( 2-phenylethyl )-4-piperidinyl ] propenamide (Fentanyl), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

Agent Background

3. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

4. I am employed by the Department of Homeland Security (DHS), and Homeland Security Investigations (HSI). I have been employed as a SA since January of 2026. I am currently assigned to the Homeland Security Task Force Narcotics (HSTF - Narcotics) in Atlanta, Georgia, where I am responsible for investigating drug organizations that operate to obtain, import, transport and distribute illegal controlled substances, as well as money laundering and bulk cash smuggling. My duties and responsibilities include the investigation of civil and criminal violations of the United States Code.

5. As a Special Agent, I investigate violations of federal drug laws and related offenses, including, but not limited to, violations of Title 21, United States Code, Sections 841, 843, 846, and Title 18, United States Code, Sections 2, 1956, 1957 and 1961.

6. Prior to employment with HSI, I was a Fulton County, Georgia Sheriff's Deputy Sergeant with the Crime Suppression Unit (CSU) in Georgia and was sworn in since 2022. As a deputy, I executed multiple high-risk warrants, proactive patrols, and suspicious person stops. I have received multiple specialized training courses in narcotics investigations with High-intensity Drug Trafficking Areas (HIDTA) and Regional Counter Drug Training Academy (RCTA). This training focused on methods of unlawful drug trafficking; the means by which drug traffickers and/or manufacturers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. Prior to my employment with the Fulton County Sheriff's Office, I was employed as an Investigator with the Clayton County Sheriff’s Office, and I was assigned to the Elite Fugitive Apprehension Unit from April 2021 to January 2022. Additionally, I was employed by the Dekalb County Police Department as a Police Officer in the Uniformed Patrol Division from August 2019 to April 2021. During this time, I was POST (Peace Officer Standards & Training Council) certified in the State of Georgia as a Basic Peace Officer in good standing since 2020 to 2026 with approximately 2,017 hours of training. At this time, I have received over approximately 480 hours of law enforcement training at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, and I am a graduate of the Criminal Investigator Training Program (CITP) at FLETC. This formalized training included, but was not limited to, narcotics investigations, controlled substance

identification, detection, interdiction, money laundering, identification and seizure of drug-related assets, and electronic and physical surveillance procedures. In addition to my experience as a local police officer/investigator and my formalized training, I have participated in numerous narcotics investigations with the Homeland Security Investigations (HSI) Violent Gang Task Force (VGTF) in Atlanta, assisting with physical surveillance, electronic surveillance, and the execution of search warrants relating to violations of Title 21, United States Code.

7. During my law enforcement career, I have participated in numerous drug trafficking investigations involving various types of drugs, including fentanyl, cocaine, heroin, methamphetamine, crystal methamphetamine, and marijuana. I am personally familiar with and have used all routine methods of investigation, including, but not limited to, visual surveillance, electronic surveillance, informant and witness interviews, interrogation, and undercover operations. During these investigations, I have observed drug traffickers use telephones in furtherance of their illegal activities. I have analyzed telephone toll records and other records and debriefed informants regarding the use of telephones in furtherance of illegal activity.

8. In connection with my official HSI duties, I assist in the investigation of criminal violations of federal drug laws and related offenses. I have received specialized training in the enforcement of drug laws, the investigation of drug trafficking and drug organizations, financial and money laundering investigations, and the use of electronic surveillance.

9. I am familiar with the way narcotic traffickers and money launderers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances. I have participated in investigations involving the following (but not limited to) types of drugs: fentanyl, cocaine, cocaine base, methamphetamine, crystal

methamphetamine, and marijuana. I have participated in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds derived from drug trafficking. I have also participated in numerous narcotics investigations -- in which I have participated in physical surveillance, electronic surveillance, undercover transactions, and the execution of search warrants.

Sources of Information

10. I make this affidavit based upon personal knowledge derived from the following: personal participation in this investigation; information I have learned from discussions with Special Agents and / or Task Force Officers of HSI and other law enforcement officers.

11. I have endeavored to make clear which facts stated in this affidavit are based upon my own personal observations and which are not. Unless otherwise noted, factual statements not based upon my personal observations are based upon information received from one or more other law enforcement officers who may have either direct or hearsay knowledge of the factual statement, such knowledge having been conveyed to me either personally or through a report that I have reviewed. Wherever in this Affidavit I state my belief, such belief is based upon my training and experience and upon the information obtained through this investigation.

12. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer or witness who may have had either direct or indirect or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance, unless otherwise indicated. Wherever in

this affidavit I state a belief, that belief is based upon my training and experience and the information obtained through this investigation.

13. Wherever in this affidavit I rely on a quotation from a conversation that occurred in Spanish or another foreign language, that quotation is based on a translation provided to me by others. These translations may be in draft form and subject to future revision.

14. The facts relayed in this affidavit do not reflect the totality of information known to me or other agents and officers.

15. Because this affidavit was prepared for the limited purpose of supporting a complaint against the individual listed herein, I have not included each and every fact known about this investigation. I have set forth only those facts that I believe are necessary to establish the required basis for a criminal complaint. I do not rely upon facts not set forth herein in reaching my conclusion that a criminal complaint should be issued, nor do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit in support of the application for a criminal complaint.

## Statement of Probable Cause

16. Since October of 2026, an HSI undercover agent (UCA) has been in contact with a Mexico based broker of fentanyl.

## Agents Purchase 6.5 Ounces of Fentanyl

17. On October 21, 2026, the Mexico based broker told the UCA that once the UCA gets past exit 99 on interstate 85 south (I-85S) to let the broker know and the broker would pass the address that the local courier would meet the UCA. Shortly thereafter, the broker passed an address of 2000 Moreland Ave (Starlite Drive in Theater).

18. At approximately 1400 hours on October 21, 2026, HSI Special Agents (SAs) and Task Force Officer (TFOs) relocated to the area of 2000 Moreland Ave to begin surveillance for the controlled purchase of 6 ½ ounces of fentanyl powder. At that time, agents were in the area of 1955 Moreland Ave SE, Atlanta, which is across the street from the Starlite Drive In Theater. While at the 1955 Moreland Ave SE an agent observed a dark (black) colored Ford Focus bearing GA tag SMW2201. Law enforcement databases indicated that the Focus is registered to a Hispanic male named Luis ESPINDOLA. The surveillance agent advised that the occupant of the Focus appeared to be Hispanic male who appeared to be repeatedly checking his surroundings. Prior to arriving at the Starlight Theater, the UCA sent a photo of the UCA's vehicle to the broker.

19. The UCA drove around the 2000 Moreland Ave address that was passed by the broker when the UCA discovered that the drive in was locked and unable to be accessed. The UCA contacted the broker via WhatsApp, and the broker then directed the UCA to the "Supermercado" that was across the street from the original meet location. This Supermercado is located at 1955 Moreland Ave SE, Atlanta, GA. The UCA then drove across the street and parked at the Supermercado.

20. ESPINDOLA exited the Ford Focus, walked over to the UCA's vehicle, entered the vehicle.[1] ESPINDOLA told the UCA that he did not have the product with him and that he needed to count the money first.[2] The UCA handed ESPINDOLA the money, the courier

---

[1] Based on ESPINDOLA knowing which car to approach, I believe that the broker or people working with the broker provided ESPINDOLA information about or a photo of the car of the UCA. Receiving this information would require ESPINDOLA to use a cellphone as part of the drug deal, and thus I believe that cell phone(s) in the possession of ESPINDOLA are used in the distribution of controlled substances.

[2] The interactions between the UCA and ESPINDOLA were recorded on a covert recording device.

counted it, returned it to the UCA. Shortly thereafter, ESPINDOLA exited the UCA's vehicle and left the location in the Ford Focus.

21. Agents conducted surveillance on the Ford Focus, locating it at 1093 Kipling St SE, Atlanta, GA 30315, which is approximately 0.1 miles from the Supermercado. Agents did not observe ESPINDOLA exit the Focus and enter the residence at 1093 Kipling St SE, Atlanta, GA 30315.

22. Agents remained in the area of Kipling St SE. Shortly thereafter, ESPINDOLA was observed walking back to the UCA's vehicle from the driveway of 1093 Kipling St SE[3], at which time the courier entered the UCA's vehicle and provided the UCA with a Ziploc type bag that contained a white powdery substance that was wrapped in a clear plastic wrap. The UCA provided ESPINDOLA $6,500 in funds in exchange for the fentanyl. Following the transaction, ESPINDOLA exited the UCA's vehicle.

23. ESPINDOLA walked back to 1093 Kipling St SE where ESPINDOLA was observed walking down the driveway, entering the residence at 1093 Kipling St SE, walking back out of the residence, getting back into the Ford Focus (the Ford Focus was originally faced with the tag visible from the roadway) and readjusting it by backing it up so that the tag was no longer visible from the roadway. Agents believe that ESPINDOLA repositioned the vehicle for the sole purpose of concealing his license plate from public view. ESPINDOLA then walked back inside the residence. Based on ESPINDOLA parking at the residence returning from the driveway of the residence to conduct the drug deal, and returning to and entering the residence, I believe that ESPINDOLA stored the fentanyl sold to the UCA at the residence.

---

[3] Based on the location of the agents conducting surveillance, they did not observe ESPINDOLA leave the residence, but did observe him walking down the driveway to the street.

24. A photo of ESPINDOLA was obtained from law enforcement databases, and the UCA and another surveillance agent were able to positively identify ESPINDOLA as the individual who delivered the suspected fentanyl. ESPINDOLA could further be identified by his distinct neck tattoos.

25. Following the transaction, agents field tested the white, powdery substance, which yielded a positive result for traces of fentanyl. The suspected fentanyl was weighed on the HSI SAC Atlanta evidence room scale at approximately 184.78 grams (gross weight).

**Agents Execute a Search Warrant at the Residence**

26. On October 23, 2026, agents executed a federal search warrant at the residence of ESPINDOLA. During the search, agents located approximately a kilogram of fentanyl in the kitchen, which field tested positive. They also located marijuana, and other suspected narcotics in the bedroom of ESPINDOLA. Also in the bedroom of ESPINDOLA, agents located two firearms ESPINDOLA in close proximity to narcotics along with the passport of ESPINDOLA and over $1,000 in cash.

Conclusion

27. Based on the foregoing, my training and experience, and information obtained through the investigation to date, I respectfully submit there is probable cause to believe that on October 23rd, 2026, in the Northern District of Georgia, Luis ESPINDOLA knowingly possessed with intent to distribute at least 400 or more grams of a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).